No. 20-35196

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

STRIKE 3 HOLDINGS, LLC,

*Appellant*,

v.

JOHN DOE, SUBSCRIBER ASSIGNED IP ADDRESS 73.225.38.130,

*Appellee*.

On Appeal from the United States District Court
for the Western District of Washington
Case No. 2:17-cv-01731-TSZ

**APPELLANT'S OPENING BRIEF**

Lincoln D. Bandlow
LAW OFFICES OF LINCOLN
    BANDLOW, P.C.
1801 Century Park East, Ste. 2400
Los Angeles, CA 90067
T: (310) 556-9680
Lincoln@BandlowLaw.com

John C. Atkin
THE ATKIN FIRM, LLC
55 Madison Avenue, Ste. 400
Morristown, NJ 07960
T: (973) 314-8010
JAtkin@AtkinFirm.com

Jeremy Roller
ARETE LAW GROUP PLLC
1218 3rd Ave., Seattle, WA 98101
T: (206) 428-3250
jroller@aretelaw.com

## <u>CORPORATE DISCLOSURE STATEMENT</u>

The parent corporation of Appellant Strike 3 Holdings, LLC is General Media Systems, LLC.  There are no publicly traded corporations that currently own 10% or more of its stock.

# **TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT ........................................................ i

STATEMENT OF ISSUES PRESENTED FOR REVIEW ...................................1

JURISDICTION..................................................................................................1

STATEMENT OF THE CASE.............................................................................1

    Procedural Background .................................................................5

    Summary of the Argument .............................................................9

STANDARD OF REVIEW ...............................................................................10

ARGUMENT ....................................................................................................10

  I.  THE DISTRICT COURT LACKED SUBJECT MATTER JURISDICTION TO ADJUDICATE DOE'S COUNTERCLAIM OF NON-INFRINGEMENT BECAUSE DOE LACKED STANDING ......................10

    A. Doe Failed to Show a Concrete Injury of Sufficient Immediacy and Reality Between Parties with Adverse Legal Interests for Which a Declaratory Judgment Would Be Useful Under All the Circumstances of this Case. ...12

    B. The District Court's Decision Improperly Faulted S3 for Complying with the Procedures for Protecting its Copyrights from Internet Piracy that were Approved of by this Court in *Glacier* and *Cobbler*....................................20

  II. THE DISTRICT COURT ERRED IN AWARDING DOE FEES AND COSTS UNDER SECTION 505 OF THE COPYRIGHT ACT ..................22

    A. S3's Legal and Factual Arguments were Objectively Reasonable. ............24

      i.  S3 is Not a "Copyright Troll.".................................................25

      ii. S3's "Failure" to Dismiss its Claim with Prejudice is Not a Valid Basis to Award Fees. ...............................................37

      iii. The District Court Erred In Concluding that it was Unreasonable for S3 to File Suit "In the First Place." .............................................40

    B. The Factors of Deterrence, Compensation, and the Purposes of the Copyright Act Do Not Support the Fee Award to Doe...............................42

CONCLUSION ................................................................................................46

CERTIFICATE OF COMPLIANCE ....................................................................49

# TABLE OF AUTHORITIES

**Cases**

*Abbott Laboratories v. Gardner*,
  387 U.S. 136 (1967) ....................................................................17

*Ahern v. Cent. Pac. Freight Lines*,
  846 F.2d 47 (9th Cir. 1988) .........................................................30

*Amer. Soccer Co. v. Score First Enterprises*,
  187 F.3d 1108 (9th Cir. 1999) .....................................................38

*Andersen v. Atl. Recording Corp.*,
  No. 07-934, 2009 WL 3806449 (D. Or. Nov. 12, 2009) ...................29

*Andy Thanh v. Oanh Tran*,
  No. 17-953, 2018 WL 4944992 (C.D. Cal. Jan. 25, 2018)..................8

*Bearden v. Health*,
  No. 20-5047, 2020 WL 4218305 (6th Cir. July 23, 2020) ................31

*Benitec Australia, Ltd. v. Nucleonics, Inc.*,
  495 F.3d 1340 (Fed. Cir. 2007).....................................................20

*Bland v. Edward D. Jones & Co., L.P.*,
  375 F. Supp. 3d 962 (N.D. Ill. 2019) .............................................15

*Bras v. California Pub. Util. Comm'n*,
  59 F.3d 869 (9th Cir. 1995) ..........................................................17

*Camacho v. City of San Luis*,
  359 Fed. Appx. 794 (9th Cir. 2009)................................................30

*Capitol Records, Inc. v. O'Leary*,
  No. 05-406, ECF No. 37 (C.D. Cal. Jan. 31, 2006)..........................40

*Caraco Pharm. Labs., Ltd. v. Forest Labs., Inc.*,
  527 F.3d 1278 (Fed. Cir. 2008)................................................ 13, 19

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)......................................................................14

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013)................................................................ 13, 16

*Cobbler Nevada, LLC v. Gonzalez*,
  901 F.3d 1142 (9th Cir. 2018) ....................................... 3, 22, 28, 29

*Criminal Prods., Inc. v. Brinkley*,
  No. 17-550, ECF No. 108 (D. Utah June 30, 2020) .........................44

*Criminal Prods., Inc. v. Cordoba*,
  808 Fed. Appx. 585 (9th Cir. 2020).................................................16

*Cunningham Bros., Inc. v. Bail*,
  407 F.2d 1165 (7th Cir. 1969) .......................................................11

iii

*DaimlerChryler Corp. v. Cuno*,
    547 U.S. 332 (2006) ................................................................................10

*Doc's Dream, LLC v. Dolores Press, Inc.*,
    959 F.3d 357 (9th Cir. 2020) .................................................................45

*Ex parte Young*,
    209 U.S. 123 (1908) ................................................................................18

*Fantasy, Inc. v. Fogerty*,
    94 F.3d 553 (9th Cir. 1996) ...................................................................45

*Fogerty v. Fantasy*, Inc.,
    510 U.S. 517 (1994) ....................................................................... *passim*

*Foster v. Carson*,
    347 F.3d 742 (9th Cir. 2003) .................................................................13

*Freeplay Music, LLC v. Dave Arbogast Buick-GMC, Inc.*,
    No. 17-42, 2019 WL 4647305 (S.D. Ohio Sept. 24, 2019) ...................30

*Glacier Films (USA), Inc. v. Turchin*,
    896 F.3d 1033 (9th Cir. 2018) ....................................................... *passim*

*Gonzales v. Transfer Techs., Inc.*,
    301 F.3d 608 (7th Cir. 2002) (Posner, J.) .............................................45

*Guadalupe Police Officer's Ass'n v. City of Guadalupe*,
    No. 10-8061, 2011 WL 13217671 (C.D. Cal. Mar. 29, 2011) ...............18

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*,
    896 F.2d 1542, 1555 (9th Cir. 1989) ............................................. 11, 17

*Hollingsworth v. Perry*,
    570 U.S. 693 (2013) ........................................................................ 10, 12

*In re Malibu Media Copyright Infringement Litig.*,
    No. 15-04170, 2016 WL 926906 (N.D. Cal. Mar. 11, 2016) ................42

*Interscope Records v. Leadbetter*,
    No. 05-1149, 2007 WL 2572336 (W.D. Wash. Sept. 6, 2007) .............39

*Kansas v. Glover*,
    140 S. Ct. 1183 (2020) ...........................................................................21

*Killer Joe Nevada, LLC v. Leaverton*,
    No. 13-4036, 2014 WL 3547766 (N.D. Iowa July 17, 2014) ................44

*Kirtsaeng v. John Wiley & Sons, Inc.*,
    136 S. Ct. 1979 (2016) ................................................................ 23, 44, 46

*Lewis v. Continental Bank Corp.*,
    494 U.S. 472 (1990) ................................................................................16

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014) ................................................................................10

iv

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ................................................................... 10, 12
*Malibu Media, LLC v. Doe*,
  238 F. Supp. 3d 638 (M.D. Pa. 2017) ................................................33
*Malibu Media, LLC v. Doe*,
  No. 13-3648, 2014 WL 2581168 (N.D. Ill. June 9, 2014) ..................29
*Malibu Media, LLC v. Doe*,
  No. 13-365, 2014 WL 7188822 (D. Md. Dec. 16, 2014) ....................28
*Malibu Media, LLC v. Doe*,
  No. 15-4441, 2016 WL 3383758 (N.D. Cal. June 20, 2016) .............16
*Malibu Media, LLC v. John Does 1, 6, 13, 14*,
  950 F. Supp. 2d 779 (E.D. Pa. 2013) ................................................32
*Malibu Media, LLC v. Pelizzo*,
  604 Fed. Appx. 879 (11th Cir. 2015) ................................................39
*Malibu Media, LLC v. Redacted*,
  705 Fed. Appx. 402 (6th Cir. 2017) ..................................................39
*Maryland Casualty Co. v. Pacific Coal & Oil Co.*,
  312 U.S. 270 (1941) ..........................................................................11
*Mattel, Inc. v. MGA Entertainment, Inc.*,
  705 F.3d 1108 (9th Cir. 2013) ............................................................9
*Mattel, Inc. v. Walking Mountain Prods.*,
  353 F.3d 792 (9th Cir. 2003) ..................................................... 23, 44
*Matthews Int'l Corp. v. Biosafe Eng'g, LLC*,
  695 F.3d 1322, 1328–29 (Fed. Cir. 2012) .......................................20
*Mayfield v. U.S.*,
  599 F.3d 964 (9th Cir. 2010) ...........................................................10
*MedImmune, Inc. v. Genentech, Inc.*,
  549 U.S. 118 (2007) ...................................................... 11, 13, 17, 20
*Microsoft Corp. v. U.S. Dep't of Justice*,
  233 F. Supp. 3d 887 (W.D. Wash. 2017) ..........................................16
*Morcote v. Oracle Corp.*,
  No. 05-0386, 2005 WL 3157512 (N.D. Cal. Nov. 23, 2005) ............11
*O'Connor v. Uber Techs., Inc.*,
  904 F.3d 1087 (9th Cir. 2018) .........................................................24
*Ours Tech., Inc. v. Data Drive Thru, Inc.*,
  645 F. Supp. 2d 830 (N.D. Cal. 2009) .............................................13
*Patrick Collins, Inc. v. John Does 1-9*,
  No. 12-3161, 2012 WL 4321718 (C.D. Ill. Sept. 18, 2012) ..............29

*Pedrina v. Chun*,
   987 F.2d 608 (9th Cir. 1993) ..............................................................38
*Pom Wonderful LLC v. Hubbard*,
   775 F.3d 1118 (9th Cir. 2014) .................................................. 24, 40
*Priority Records, LLC v. Chan*,
   No. 04-73645, 2005 WL 2277107 (E.D. Mich. May 19, 2005) .........40
*Quinto v. Legal Times of Washington, Inc.*,
   511 F. Supp. 579 (D.D.C. 1981)..........................................................46
*Riviera Distributors, Inc. v. Jones*,
   517 F.3d 926 (7th Cir. 2008) ..............................................................44
*Rozelle v. Quinn*,
   47 F. Supp. 740 (S.D. Cal. 1942)........................................................20
*San Diego Cnty. Gun Rights Comm. v. Reno*,
   98 F.3d 1121 (9th Cir. 1996) ..............................................................17
*Schiffer Publ'g, Ltd. v. Chronicle Books, LLC*,
   No. 3-44444962, 2005 WL 1244923 (E.D. Pa. May 24, 2005) .........46
*SellPoolSuppliesOnline.com LLC v. Ugly Pools Arizona Inc.*,
   No. 15-01856, 2019 WL 1118206 (D. Ariz. Mar. 11, 2019) .............45
*Shame on You Prods., Inc. v. Banks*,
   893 F.3d 661 (9th Cir. 2018) ..............................................................24
*Shell Oil Co. v. Frusetta*,
   290 F.2d 689 (9th Cir. 1961) ..............................................................11
*Shloss v. Sweeney*,
   515 F. Supp. 2d 1068 (N.D. Cal. 2007)..............................................17
*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016)........................................................................12
*Steel Co. v. Citizens for a Better Environment*,
   523 U.S. 83 (1998)..............................................................................16
*Steffel v. Thompson*,
   415 U.S. 452 (1974)............................................................................18
*Strike 3 Holdings, LLC v. Doe*,
   330 F.R.D. 552 (D. Minn. 2019) ........................................................33
*Strike 3 Holdings, LLC v. Doe*,
   337 F. Supp. 3d 246 (W.D.N.Y. 2018)...............................................31
*Strike 3 Holdings, LLC v. Doe*,
   351 F. Supp. 3d 160 (D.D.C. 2018)............................................ 26, 29
*Strike 3 Holdings, LLC v. Doe*,
   370 F. Supp. 3d 478 (E.D. Pa. 2019) ......................................... 31, 32

*Strike 3 Holdings, LLC v. Doe*,
   No. 18-01490, 2019 WL 1529339 (W.D.N.Y. Apr. 8, 2019) ............................3
*Strike 3 Holdings, LLC v. Doe*,
   No. 18-02019, 2018 WL 10604533 (N.D. Cal. Sept. 14, 2018).........................31
*Strike 3 Holdings, LLC v. Doe*,
   No. 18-3763, ECF 12 (N.Y.E.D. Nov. 14, 2018) .............................................31
*Strike 3 Holdings, LLC v. Doe*,
   No. 18-12585, 2019 WL 5446239 (D.N.J. Oct. 24, 2019) ................................31
*Strike 3 Holdings, LLC v. Doe*,
   No. 18-12585, 2020 WL 3567282 (D.N.J. June 30, 2020)................................33
*Strike 3 Holdings, LLC v. Doe*,
   No. 18-1490, 2019 WL 1529339 (W.D.N.Y. Apr. 8, 2019) .............................31
*Strike 3 Holdings, LLC v. Doe*,
   No. 18-1762 (E.D. Pa. Oct. 2, 2018) ...............................................................31
*Strike 3 Holdings, LLC v. Doe*,
   No. 18-7188, 2020 WL 3967836 (D.C. Cir. July 14, 2020)...................... *passim*
*Strike 3 Holdings, LLC v. Doe*,
   No. 19-00158, ECF No. 26 (N.D. Cal. Aug. 12, 2019) .......................................3
*Susan B. Anthony List v. Driehaus*,
   573 U.S. 149 (2014).........................................................................................12
*Terrace v. Thompson*,
   263 U.S. 197 (1923).........................................................................................18
*Tresona Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n*,
   953 F.3d 638 (9th Cir. 2020) ........................................................ 23, 24, 44, 45
*Twentieth Century Music Corp. v. Aiken*,
   422 U.S. 151 (1975).........................................................................................10
*U.S. v. Owens*, No. 18-157,
   2019 WL 6896144 (E.D. Wis. Dec. 18, 2019) ................................................41
*U.S. v. Rees*,
   957 F.3d 761 (7th Cir. 2020) ..........................................................................41
*U.S. v. Taylor*,
   487 U.S. 326 (1988).........................................................................................23
*Valle del Sol Inc. v. Whiting*,
   732 F.3d 1006 (9th Cir. 2013) .........................................................................18
*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State*,
   454 U.S. 464 (1982).........................................................................................11
*Vient v. APG Media*,
   No. 18-3862, 2019 WL 2250576 (D. Md. May 24, 2019) ................................29

*Village of Euclid v. Ambler Realty Co.*,
   272 U.S. 365 (1926) ...................................................................................18
*Virgin Records Am., Inc. v. Thompson*,
   512 F.3d 724 (5th Cir. 2008) ....................................................................39
*Wall Data Inc. v. L.A. Cnty. Sheriff's Dep't*,
   447 F.3d 769 (9th Cir. 2006) ....................................................................10
*Wilbur v. City of Mount Vernon*,
   No. 11-1100, 2011 WL 13101827 (W.D. Wash. Oct. 17, 2011) .......................15
*Wolf v. Travolta*,
   No. 14-00938, 2016 WL 1676427 (C.D. Cal. Apr. 25, 2016) ...........................45

**Statutes**

17 U.S.C. § 505 ...............................................................................................1
28 U.S.C. § 1291 .............................................................................................1
28 U.S.C. § 1331 .............................................................................................1
28 U.S.C. § 1338 .............................................................................................1
28 U.S.C. § 2201 ...........................................................................................10
47 U.S.C. § 551 ................................................................................... 2, 21, 28

**Rules**

Fed. R. Civ. P. 1 ............................................................................................22
Fed. R. Civ. P. 13 ............................................................................................8
Fed. R. Civ. P. 26 ............................................................................................7
Fed. R. Civ. P. 41 .........................................................................................4, 7
Fed. R. Civ. P. 7 ..............................................................................................8

**Other Authorities**

David Blackburn, Jeffrey A Eisenach & David Harrison, *Impacts of Digital Video
   Piracy on the U.S. Economy* (June 2019), *available at*
   https://www.theglobalipcenter.com/wp-content/uploads/2019/06/Digital-Video-
   Piracy.pdf ................................................................................................28
Stephen Carlisle, *Is Pornography Not Protected by Copyright?*, Nova Southern
   University Office of Copyright (Dec. 7, 2018), *available at*
   http://copyright.nova.edu/pornography/ ...................................................25
U.S. CONST. Art. 1, § 8, cl. 8 .........................................................................32

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.     Whether the District Court lacked subject matter jurisdiction over Appellee John Doe's ("Doe")[1] counterclaim of non-infringement after Appellant Strike 3 Holdings, LLC ("S3") dismissed its complaint for copyright infringement.

2.     Whether the District Court abused its discretion by awarding Doe attorney's fees and costs under 17 U.S.C. § 505.

## JURISDICTION

The District Court initially had subject matter jurisdiction over S3's claim for copyright infringement pursuant to 28 U.S.C. §§ 1331 and 1338(a) but, once S3 voluntarily dismissed its claim, the District Court lost jurisdiction over Doe's stand-alone counterclaim for declaratory relief.  The District Court entered a final judgment on February 3, 2020, and S3 timely filed a Notice of Appeal on March 2, 2020.  This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE CASE

S3 produces adult movies,[2] which it distributes, *inter alia*, via its subscription-based websites.  These movies are protected by copyright.  Like many

---

[1] Doe and his son ("Son") are not referred to by their real names in this brief, pursuant to the stipulated protective order entered by the District Court.  ER138 (Dkt. Nos. 17, 20).

[2] S3 serves as the holding company for the copyrights of the works produced by its parent company, General Media Systems, LLC.  Although distinct corporate entities, they are treated synonymously for purposes of this appeal.

1

other rightsholders, S3 faces widespread Internet piracy of its protected works which, as this Court has recognized, "can have severe financial consequences for copyright holders." *Glacier Films (USA), Inc. v. Turchin*, 896 F.3d 1033, 1035 (9th Cir. 2018). S3 endeavors to protect its creative enterprise, and the scores of people who depend on it for their livelihood, by policing internet piracy in the manner endorsed and prescribed by this Court.

The bulk of infringement of S3's works is committed by individuals downloading and distributing its movies using the BitTorrent protocol. Even though these suits "fit[] squarely within the tradition of copyright enforcement," *id.* at 1041, unique technological obstacles add a level of complexity to these cases. First, the BitTorrent protocol does not reveal an infringer's identity, but only his or her IP address. Only one entity can correlate an IP address to a subscriber, whose identity S3 needs to investigate to identify the infringer, amend its pleadings, and serve process, and that is the subscriber's internet service provider ("ISP"). But Congress has forbidden ISPs from disclosing a subscriber's identity absent a court order, and a lawsuit is required to obtain such a court order. *See* Cable Communications Policy Act of 1984, 47 U.S.C. § 551 *et seq.*

This sets up a conundrum: S3 must first file a complaint against an unknown "John Doe" subscriber, as a placeholder, to get a court order permitting the ISP subpoena so that S3 may investigate who infringed its copyrights. Courts

across the country have thus adopted "early discovery" procedures that allow

parties like S3, upon a sufficient showing, to discover a subscriber's identity,

investigate whether they are the infringer, and depending on the unique facts of

each case, amend or dismiss its claim.

To be clear, S3 does not prosecute subscribers reflexively.[3]  Rather, S3 uses

the information it learns from early discovery to investigate whether it can identify

the likely infringer.  S3 also determines whether the infringer falls into any of the

categories that S3's policies exclude from enforcement,[4] in which case S3

dismisses the lawsuit.  This two-step inquiry ensures that S3 only litigates

meritorious claims against serial infringers while not offending fair play.

This case could—and should—have been a typical BitTorrent case, but for

the District Court interjecting itself into the early discovery process.  After S3

learned that someone in the Western District of Washington was using IP address

---

[3] S3 notes that much of the relevant procedural history of this matter occurred prior
to this Court's decision in *Cobbler Nevada, LLC v. Gonzalez*, 901 F.3d 1142 (9th
Cir. 2018), but even before that decision was issued, S3 did not proceed beyond the
"early discovery" stage in matters where it could not allege, in an amended
complaint, "something more" than the defendant being the IP address subscriber.

[4] S3 dismisses claims where it learns the likely infringer is in active military
service, can demonstrate severe financial hardship, is a minor, or where the ISP
subpoena response shows the subscriber is a business with publicly available
internet.  SR007; *see, e.g.*, *Strike 3 Holdings, LLC v. Doe*, No. 18-7188, __ F.3d
__, 2020 WL 3967836, at *6 n.5 (D.C. Cir. July 14, 2020); *Strike 3 Holdings, LLC
v. Doe*, No. 19-00158, ECF No. 26 (N.D. Cal. Aug. 12, 2019); *Strike 3 Holdings,
LLC v. Doe*, No. 18-01490, 2019 WL 1529339, at *5 (W.D.N.Y. Apr. 8, 2019).

73.225.38.130 to infringe on a substantial number of its copyrights, S3 filed its initial complaint and sought (and was granted) leave to conduct early discovery.

However, this case diverged from the "sensible" and "practical" procedure endorsed by this Court, *Glacier*, 896 F.3d at 1036, 1038, 1040, designed to "secure [a] just, speedy, and inexpensive determination," *see* Fed. R. Civ. P. 1, when it was transferred to Judge Zilly, who immediately amended the order granting early discovery and replaced it with a novel procedure. The new procedure required S3 to proceed against the anonymous placeholder defendant without the crucial discovery necessary to determine whether Doe was the infringer. As the District Court's decision on appeal later revealed, this procedure ensured S3 would be "trapped" in the suit (regardless of whether it would have pursued the claim had it known the subscriber's identity) and that S3 would be penalized with a fee award if it later proved that the infringer was someone else in the household.

When S3 eventually learned Doe's identity—months into the case—it discovered that both Doe and his Son lived in the same household, had the same first and last names, and both used the BitTorrent protocol to download and distribute files, all of which made it impossible to pinpoint which person infringed S3's copyrights. Rather than risk proceeding against a potentially innocent party based only on a fifty-fifty chance, S3 exercised its right to dismiss its claim without prejudice pursuant to Fed. R. Civ. P. 41(a).

4

This outcome was not satisfactory to the District Court. Instead, it permitted Doe to maintain free-standing counterclaims, which Doe had no standing to assert, and forced S3 to essentially prosecute the infringement claim that it had *already* dismissed. The District Court then engaged in a superficial analysis to conclude that a fee award in Doe's favor was warranted.

In so doing, the District Court made two errors. First, the District Court made an error of law when it held that Doe had standing to pursue his stand-alone counterclaim for declaratory relief after S3 dismissed its claim, based only on Doe's "apprehension" that S3 *might* someday refile its claim against him. Second, the District Court abused its discretion when it awarded attorney's fees and costs to Doe under Section 505 of the Copyright Act. These errors require reversal.

## *Procedural Background*

This case began when S3's investigator recorded evidence that an individual using IP address 73.225.38.130 was downloading and distributing a substantial number of S3's copyrighted works for several months. *See* ER112; ER120, ER122–23. S3 filed suit against the subscriber as a "John Doe" and applied for leave to seek early discovery. ER137 (Dkt. No. 4). Judge Pechman, originally assigned to this matter, granted S3's limited discovery request. ER103–04.

What S3 did not know—what it could not know—when it filed its Complaint was that the subscriber was not the only person using this IP address to

download and distribute files using the BitTorrent protocol; Doe's adult Son did so as well. ER040–50. Moreover, father and son had *identical* names, both lived at the *same* address, and both used the *same* IP address and the *same* program to download and distribute works using the BitTorrent protocol. *See id.*

Typically, S3 would have received Doe's identity from the ISP, learned of this peculiar set of facts, and dismissed its claim without serving the subscriber with any pleading. This is what would have occurred had the order put in place by Judge Pechman been allowed to stand. After that "sensible" and "practical" order was entered, however, this matter was transferred to Judge Zilly, who *sua sponte* amended it to prevent S3 from learning Doe's identity, required the ISP to provide its subpoena response *to the Court*, and required S3 to send in a "blank" summons so that *the Court* could effect service on Doe without S3 learning Doe's identity. ER029–30. This left S3 with a Hobson's choice: it could either forfeit the protections afforded its works by the Copyright Act, or comply with the procedure imposed by the District Court and litigate against an unknown party.

Once served, Doe retained an attorney experienced in BitTorrent litigation who could have quickly ended the case by informing S3 of his client's identity. Instead, Doe's counsel capitalized on the District Court's amended order as a license to withhold his client's identity and pepper the docket with motions, affirmative defenses, and counterclaims—throwing them against the wall to see

6

what would stick. First, on the same day that Doe filed a motion for a more definite statement and a motion to dismiss, ER138 (Dkt. No. 21), Doe also filed Counterclaims—but no answer—for a declaratory judgment of non-infringement, negligent infliction of emotional distress, and outrage. ER095–98. S3 moved to dismiss. ER138 (Dkt. No. 24). Doe then filed amended Counterclaims—but still no answer—which abandoned his original counterclaims (except for declaratory relief) and added counterclaims for copyright misuse and abuse of process. ER082–94. S3, again, moved to dismiss. ER139 (Dkt. No. 35).

Through all of this, Doe's counsel refused to identify Doe, despite being required to do so by order and the rules of civil procedure. ER099; Fed. R. Civ. P. 26(a)(1)(A)(i). It was not until three months after initial disclosures were due, and five months after the District Court received Doe's identity, that S3 finally learned Doe's name. S3 promptly consulted publicly available resources (the very same resources it would have consulted before serving the complaint, had the District Court allowed S3 to learn Doe's name before issue was joined) and determined it could not conclusively identify whether Doe or his Son was the infringer. Since Doe had only filed stand-alone counterclaims, rather than an answer or motion for summary judgment, S3 promptly exercised its right to dismiss without prejudice pursuant to Fed. R. Civ. P. 41(a), thirty-four days after learning Doe's name. ER064.

7

The District Court then dismissed Doe's counterclaim for copyright misuse but—without analysis—declined to dismiss Doe's counterclaims for declaratory relief and abuse of process, allowing these counterclaims to proceed despite not being asserted in a pleading.[5]  ER027.  Thus, over a year after S3 filed its Complaint, Doe filed his Second Amended Counterclaims (which merely removed the dismissed counterclaim for misuse of copyright, and which were *still* not asserted in a pleading), ER058–63, and S3 answered the remaining counterclaims. ER141 (Dkt. No. 65).

After months of discovery, which included deposing all of S3's witnesses and several of its corporate officers, and which produced the admission by Doe's Son that he used BitTorrent to download and distribute adult works, but merely could not remember if they belonged to S3 or not, ER041, the District Court decided that Doe actually never stated a claim for abuse of process in the first place, and dismissed that counterclaim.  ER020–22.

In its order adjudicating the abuse of process counterclaim, the District Court noted that the counterclaim for declaratory relief remained and that, because

---

[5] *Cf.* Fed. R. Civ. P. 13 (requiring that counterclaims be set forth in or concurrent with "a pleading"); Fed. R. Civ. P. 7 (setting forth an exclusive list of pleadings that does not include a free-standing counterclaim); *see also Andy Thanh v. Oanh Tran*, No. 17-953, 2018 WL 4944992, at *1 (C.D. Cal. Jan. 25, 2018) (denying leave to file counterclaim because "[u]nder Federal Rules of Civil Procedure 7 and 13, Defendants may not file a counterclaim without filing an answer").

that claim would entail an application for fees and costs, scheduled briefing on the issue. ER023. Doe filed his motion for partial summary judgment ("PMSJ") and sought fees and costs, ER150 (Dkt. Nos. 174–76), which S3 opposed. ER150–51 (Dkt. Nos. 178–80). The District Court granted Doe's PMSJ and awarded him attorney's fees and costs. ER002–17. This appeal followed.

## *Summary of the Argument*

Doe lacked Article III standing to assert his stand-alone counterclaim for declaratory relief because the only "injury" he alleged was a purported "apprehension" that S3 might someday refile its infringement claim. Controlling precedent holds that apprehension of a hypothetical event does not provide standing to obtain declaratory relief that will not affect a party's future behavior.

The District Court abused its discretion by awarding Doe attorney's fees and costs under the Copyright Act. In exercising discretion whether to award fees, the District Court was required to consider a variety of factors "so long as such factors are faithful to the purposes of the Copyright Act and are applied to prevailing plaintiffs and defendants in an evenhanded manner." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994). In making its fee award, the District Court relied on improper factors, misconstrued others, and was not evenhanded in its analysis. The fee award does not "further the purposes of the Act," *Mattel, Inc. v. MGA Entertainment, Inc.*, 705 F.3d 1108, 1111 (9th Cir. 2013), "to stimulate artistic

9

creativity for the general public good." *Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 156 (1975).

## STANDARD OF REVIEW

"Standing is a question of law that [is] review[ed] de novo." *Mayfield v. U.S.*, 599 F.3d 964, 970 (9th Cir. 2010). "[A] district court's decision regarding the award of attorneys' fees under the Copyright Act [is reviewed] for an abuse of discretion." *Wall Data Inc. v. L.A. Cnty. Sheriff's Dep't*, 447 F.3d 769, 787 (9th Cir. 2006).

## ARGUMENT

I.  **THE DISTRICT COURT LACKED SUBJECT MATTER JURISDICTION TO ADJUDICATE DOE'S COUNTERCLAIM OF NON-INFRINGEMENT BECAUSE DOE LACKED STANDING**

Article III courts have an enduring constitutional obligation to ensure that standing exists through all stages of the litigation. *Hollingsworth v. Perry*, 570 U.S. 693, 705 (2013). The party invoking federal jurisdiction bears the burden of establishing it has standing to pursue its claim. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *see Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014); *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (a party "must demonstrate standing for each claim he seeks to press").

Doe counterclaimed under the Declaratory Judgment Act. *See* 28 U.S.C. § 2201(a) (requiring "a case of actual controversy"); *Hal Roach Studios, Inc. v.*

10

*Richard Feiner & Co.*, 896 F.2d 1542, 1555 (9th Cir. 1989). "The purpose of the [Act] is to afford an added remedy to one who is uncertain of his rights and who desires an early adjudication thereof without having to wait until his adversary should decide to bring suit, *and to act at his peril in the interim*." *Shell Oil Co. v. Frusetta*, 290 F.2d 689, 692 (9th Cir. 1961) (emphasis added). The Act's goal is to "*avoid accrual of avoidable damages* to one not certain of his rights[.]" *Morcote v. Oracle Corp.*, No. 05-0386, 2005 WL 3157512, at *4 (N.D. Cal. Nov. 23, 2005) (quoting *Cunningham Bros., Inc. v. Bail*, 407 F.2d 1165, 1167 (7th Cir. 1969)) (emphasis added).

A party seeking relief under the Act must show "under all the circumstances" that there is "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). Those requirements "are not satisfied merely because a party requests a court of the United States to declare its legal rights, and has couched that request . . . in terms that have a familiar ring to those trained in the legal process." *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State*, 454 U.S. 464, 471 (1982).

**A.    Doe Failed to Show a Concrete Injury of Sufficient Immediacy and Reality Between Parties with Adverse Legal Interests for Which a Declaratory Judgment Would Be Useful Under All the Circumstances of this Case.**

Doe's only claim of injury, that he had "apprehension" that S3's claim might be refiled against him, does not satisfy the standing requirements for declaratory relief.  "An injury sufficient to satisfy Article III must be 'concrete and particularized' and 'actual or imminent, not 'conjectural' or 'hypothetical.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Lujan*, 504 U.S. at 560).  "[I]t is not enough that the party invoking the power of the court have a keen interest in the issue." *Hollingsworth*, 570 U.S. at 700.  "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Spokeo, Inc. v. Robins*, __ U.S. __, 136 S. Ct. 1540, 1548 (2016).

Doe's counterclaim, both as asserted before S3's voluntary dismissal, and in the operative counterclaim filed afterward, contained the following allegations regarding his injury:

> 33.    Absent a declaration of non-infringement DOE has an objectively reasonable apprehension of becoming the target of another lawsuit on the claims alleged here, or similar claims by this Plaintiff.

> 34.    Dismissal of this lawsuit without prejudice is inadequate to vindicate DOE's rights.

ER059, ER089.

The District Court found these allegations alone to be sufficient to confer standing. *See* ER009–11. However, as "[t]he Court explained in *MedImmune* . . . whether a declaratory judgment action presents an Article III controversy must be determined based on 'all the circumstances,' not merely on whether the declaratory judgment plaintiff is under a reasonable apprehension of suit." *Caraco Pharm. Labs., Ltd. v. Forest Labs., Inc.*, 527 F.3d 1278, 1288 (Fed. Cir. 2008) (citing *MedImmune*, 549 U.S. at 127); *see Ours Tech., Inc. v. Data Drive Thru, Inc.*, 645 F. Supp. 2d 830, 834 (N.D. Cal. 2009).

As this Court has recognized, the "mere possibility that something might happen is too remote to keep alive a case as an active controversy." *Foster v. Carson*, 347 F.3d 742, 748 (9th Cir. 2003). Similarly, the Supreme Court has "repeatedly reiterated that threatened injury must be *certainly impending* to constitute injury in fact, and that [a]llegations of *possible* future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citations and internal quotation marks omitted) (emphasis original).

In *Clapper*, challengers sought declaratory relief invalidating a provision of the Foreign Intelligence Surveillance Act of 1978 ("FISA"), based on two theories of standing. First, the challengers argued there was an "objectively reasonable likelihood that their communications will be acquired under [the FISA provision] at some point in the future, thus causing them injury." *Id.* at 407. Second, they

13

argued that the risk of that surveillance was "so substantial that they have been forced to take costly and burdensome measures to protect the confidentiality of their international communications[.]" *Id.* The Supreme Court rejected both theories as insufficient to confer standing.

As to the first theory, the Court held an "'objectively reasonable likelihood' standard is inconsistent with [the] requirement that 'threatened injury must be certainly impending to constitute injury in fact,'" and that because the challenger's theory of standing "relie[d] on a highly attenuated chain of possibilities, [it] does not satisfy the requirement that threatened injury must be certainly impending." *Id.* at 410. Doe's claim here—that he is under an "objectively reasonable apprehension" S3's claim against him might be refiled—is similarly deficient.

As this Court instructed in *Cobbler*, once in possession of the identity of an IP address subscriber, a plaintiff can no longer state a plausible infringement claim against them without alleging "something more," beyond merely being the subscriber, to tie them to the infringement. 901 F.3d at 1145. And there is no dispute that S3 cannot refile suit against Doe based on the evidence in the record.[6] As such, Doe's "apprehension" that S3's claim might be refiled against him is

---

[6] Indeed, if there was evidence in the record of "something more" to tie Doe (rather than his Son) to the infringement, the District Court's grant of summary judgment would fail not only for lack of standing, but also on substantive grounds. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

based on unlikely possibilities, namely, that *Cobbler* would be overturned or that Doe would make a public admission of guilt. Without either unlikely event, S3 simply cannot refile its claim against Doe. As such, Doe's apprehension that S3 *might* someday refile a deficient claim against him is simply too speculative and remote to confer standing. *See Wilbur v. City of Mount Vernon*, No. 11-1100, 2011 WL 13101827, at *2 (W.D. Wash. Oct. 17, 2011) (denying leave to file amended complaint as futile where new party's standing was based on apprehension that complaint dismissed without prejudice might someday be refiled because "[h]ypothetical harm is not concrete, actual, or imminent enough to constitute an 'injury in fact' for purposes of the Article III case and controversy requirement"); *see also Bland v. Edward D. Jones & Co., L.P.*, 375 F. Supp. 3d 962, 974 (N.D. Ill. 2019) ("Because Plaintiffs' allegations amount to little more than an avowal of their fear of litigation, the Court cannot conclude that they have alleged enough to invoke the Court's jurisdiction").

As to the second theory advanced in *Clapper*, the Court rejected the challenger's attempt to show standing based on their own decision to spend funds to counteract their "objectively reasonable" concerns of surveillance, holding that a party cannot "manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Id.* at 416. Here, Doe similarly attempted to manufacture standing by claiming that he

15

needed to pursue this counterclaim because a dismissal without prejudice was "inadequate to vindicate DOE's right[s]," since such a dismissal would not allow Doe to seek attorney's fees as a prevailing party. *See Criminal Prods., Inc. v. Cordoba*, 808 Fed. Appx. 585, 585–86 (9th Cir. 2020). Doe simply cannot manufacture standing in this fashion.[7] *Clapper*, 568 U.S. at 416; *see also Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 107 (1998); *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 480 (1990).

Moreover, "[s]pecial standing considerations apply to a declaratory judgment action," because a "[d]eclaratory judgment is not a corrective remedy and should not be used to remedy past wrongs." *Microsoft Corp. v. U.S. Dep't of Justice*, 233 F. Supp. 3d 887, 897–98 (W.D. Wash. 2017) (citation omitted). "'[T]here is a further requirement that [the party] show a *very significant possibility of future harm*' in addition to the three Article III standing elements."

---

[7] The District Court was also plainly—and erroneously—dissatisfied with any outcome where Doe did not acquire "prevailing party" status, stressing that "[a] different result might have been appropriate" had S3 dismissed its claim *with* prejudice or agreed to enter into a covenant not to sue, and characterizing S3's actions as a "gimmick designed to allow [the plaintiff] an easy exit" once early discovery revealed it should not pursue its claim further, and to "thwart John Doe's efforts to obtain attorney's fees and costs." ER011 (quoting *Malibu Media, LLC v. Doe*, No. 15-4441, 2016 WL 3383758 at *2 (N.D. Cal. June 20, 2016)). However, that decision is no longer viable in light of this Court's decisions in *Glacier* and *Cobbler*, and the D.C. Circuit's 2020 decision in *Strike 3*. S3's actions are not a "gimmick"; they are the legally correct actions a rightsholder must undertake when protecting its copyrights from anonymous internet infringement.

16

*Id*. at 898 (quoting *San Diego Cnty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996)) (emphasis added). "[I]t is insufficient . . . to demonstrate only a past injury." *San Diego Cnty. Gun Rights Comm.*, 98 F.3d at 1126 (citing *Bras v. California Pub. Util. Comm'n*, 59 F.3d 869, 873 (9th Cir. 1995)).

Relieving a party's apprehension of a hypothetical future suit—by announcing only the *facts* of that party's *past conduct*—is not the type of declaratory relief that an Article III court is empowered to grant. Rather, a justiciable controversy exists only if the party seeking declaratory relief can show that it will affect the party's *future behavior* by declaring its *legal rights*, either enabling it to continue to do something it *has* a legal right to do, or cease refraining from doing something that it *would have* a legal right to do. *See Hal Roach Studios, Inc.*, 896 F.2d at 1556.

Here, however, Doe failed to show his "apprehension" that S3 might refile its claim "put[] [him] to the choice between abandoning his rights or risking prosecution[.]" *MedImmune*, 549 U.S. at 129 (quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 152 (1967)). Although the Act allows prospective defendants to sue to establish their nonliability, they must still allege that they are engaging in an activity they have a "right" to do or are "self-censoring" themselves due to their apprehension of suit. *See Shloss v. Sweeney*, 515 F. Supp. 2d 1068, 1075 (N.D. Cal. 2007); *see also Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1015

17

(9th Cir. 2013); *Guadalupe Police Officer's Ass'n v. City of Guadalupe*, No. 10-8061, 2011 WL 13217671, at *3 (C.D. Cal. Mar. 29, 2011).

On this point, the Supreme Court's decision in *MedImmune*—a decision misconstrued by the District Court—illuminates Doe's lack of standing. In *MedImmune*, the petitioner had obtained a license from Genentech, the holder of the patent for a drug called Synagis, which represented eighty percent of MedImmune's revenue. 549 U.S. at 122. MedImmune brought a declaratory judgment action challenging the validity of the patent while continuing to pay royalties as required by the license agreement. Everyone agreed that MedImmune could have continued to produce and sell Synagis while withholding royalties and waited for Genentech to sue for patent infringement. But, as the Supreme Court pointed out, this would have entailed considerable risks: If Genentech won its patent infringement suit, MedImmune "could be ordered to pay treble damages and attorney's fees, and could be enjoined from selling Synagis," which formed the backbone of its business. *Id.* The Court concluded that MedImmune was not required to "bet the farm"—by actually violating the license agreement—to present a justiciable controversy. *Id.* at 129 (citing *Terrace v. Thompson*, 263 U.S. 197 (1923); *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365 (1926); *Ex parte Young*, 209 U.S. 123 (1908); and *Steffel v. Thompson*, 415 U.S. 452 (1974)). "In each of these cases," the Court explained, although "the plaintiff had eliminated

18

the imminent threat of harm by simply not doing what he claimed the right to

do . . . . That did not preclude subject matter jurisdiction because the threat-

eliminating behavior was effectively coerced." *Id.*

Thus, subject matter jurisdiction in *MedImmune*, and the cases on which it

relied, was not predicated on the fact that the plaintiffs denied engaging in a

wrongful activity that they *agreed would be wrong had they done it* and merely

wanted a declaration regarding their innocence. Nor was the question, as the

District Court concluded, whether the threat of litigation was merely "very real" to

confer standing to seek declaratory relief. *See Caraco Pharm. Labs.*, 527 F.3d at

1288. Rather, subject matter jurisdiction was based on the *future* conduct that the

plaintiffs wished to take that they asserted was lawful, but were afraid to do

because of the serious adverse consequences that might flow if they did so without

a prior adjudication of their rights: in *MedImmune*, producing Synagis without

paying royalties; in *Terrace*, leasing to aliens; in *Steffel*, distributing handbills. It

was this *future harm* that gave the plaintiffs in those cases the concrete interest

necessary for Article III standing to pursue declaratory relief.

Unlike the plaintiffs in those cases, Doe does not claim that his purported

"apprehension" of suit is causing him any similar future harm; he does not claim

he has a right to download and distribute S3's copyrighted works, but is refraining

from doing so out of fear that, without a legal declaration of his right to do so, he

19

would be risking increased (or any) liability. *Cf. Matthews Int'l Corp. v. Biosafe Eng'g, LLC*, 695 F.3d 1322, 1328–29 (Fed. Cir. 2012); *Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1348 (Fed. Cir. 2007). Instead, the only thing Doe claims to be "apprehensive" of is the prospect of S3 refiling its claim against him for the *past* infringements identified in S3's Complaint, which S3 voluntarily dismissed after learning Doe's identity.

In short, Doe seeks an entirely *factual* declaration, concerning only his *past* conduct, that in no way "touch[es] the legal relations of parties having adverse legal interests." *MedImmune*, 549 U.S. at 127 (citation omitted); *Rozelle v. Quinn*, 47 F. Supp. 740, 742 (S.D. Cal. 1942) ("Declaratory relief requires the existence of rights and legal relations capable of declaration."). Obtaining a declaratory judgment will not change Doe's behavior or affect his legal rights one jot. Unlike in *MedImmune*, Doe risks no increased (or any) liability if declaratory relief is not allowed here, since the entire basis of Doe's counterclaim is that he has never— and will never—download or distribute S3's copyrighted works.

**B.    The District Court's Decision Improperly Faulted S3 for Complying with the Procedures for Protecting its Copyrights from Internet Piracy that were Approved of by this Court in *Glacier* and *Cobbler*.**

The District Court attempted to distinguish this matter from *MedImmune* based on the fact that S3 "took the very 'real' steps of commencing this proceeding and seeking expedited discovery," and that "when [Doe] filed an amended version

20

of his counterclaim . . . ,  S3's copyright infringement claim was still pending, and the Court had Article III jurisdiction."  ER010.  This holding, however, not only ignores S3's voluntary dismissal, but also the context of S3's initial complaint and motion for early discovery, which are among the "circumstances" the Court was required to consider under *MedImmune*.

To be sure, S3 identified Doe as the anonymous placeholder defendant at the outset of this case and sought early discovery to learn his identity.  S3's Complaint identified Doe as the defendant because, by virtue of the architecture of the internet and the qualified privacy interest created by 47 U.S.C. § 551, Doe was the only party that S3 *could* identify who had consistent access to the offending IP address before early discovery was permitted in this matter.  *See Strike 3*, 2020 WL 3967836 at *5–7; *see also Kansas v. Glover*, __ U.S. __, 140 S. Ct. 1183 (2020) (recognizing reasonable inference supporting investigatory stop that owner is also driver of vehicle in absence of negating information).

As this Court has specifically recognized, early discovery in BitTorrent copyright infringement litigation, *i.e.*, "allow[ing] copyright holders to seek limited discovery from an Internet Service Provider to establish a potential infringer's identity[,]" is "practical" and "sensible."  *Glacier*, 896 F.3d at 1036, 1038, 1040 (citations and internal quotation marks omitted).  It is only where that discovery reveals that the plaintiff is unable to allege "something more" to connect the

21

defendant to the infringement, beyond merely being the subscriber, that the proper course is for the plaintiff to not pursue the infringement claim further. *Cobbler*, 901 F.3d at 1145; *see Strike 3*, 2020 WL 3967836, at *6 (distinguishing *Cobbler* and observing that it is only where a subscriber's identity becomes known and "Strike 3 is unable to plead additional facts tying the registered subscriber to the alleged infringement, [that] the scales may tilt towards implausibility").

Here, the District Court *prevented* S3 from learning Doe's identity at the outset of the case, changing the process for prosecuting BitTorrent infringement claims, which Doe's counsel then abused, resulting in significant and costly motion practice. *Cf.* Fed. R. Civ. P. 1. When S3 finally received Doe's identity and determined it did not have sufficient evidence to proceed further, it promptly dismissed its claim. The only reason S3's claim was not dismissed *before* Doe's counterclaim(s) were filed was Judge Zilly's *sua sponte* decision to amend Judge Pechman's order to *prevent* S3 from learning Doe's identity prior to serving the complaint. The fact that S3 named and served the subscriber as the defendant under these peculiar "circumstances" does not support finding standing based on Doe's "apprehension" that the dismissed claim might someday be refiled.

## II. THE DISTRICT COURT ERRED IN AWARDING DOE FEES AND COSTS UNDER SECTION 505 OF THE COPYRIGHT ACT

Fee awards in copyright cases are governed by Section 505 of the Copyright Act, 17 U.S.C. § 505, which accords district courts discretion to award "a

reasonable attorney's fee to the prevailing party." While courts have "wide latitude" in awarding fees, such "discretion is rarely without limits." *Kirtsaeng v. John Wiley & Sons, Inc.*, __ U.S. __, 136 S. Ct. 1979, 1985 (2016) (internal citations and quotations omitted). This is necessarily so, because "[w]ithout governing standards or principles, such provisions threaten to condone judicial 'whim' or predilection." *Id.* at 1985–86. When reviewing such a discretionary decision, this Court "must take care to ensure that 'discretionary choices are not left to a court's inclination, but to its judgment; and [that] its judgment is . . . guided by sound legal principles.'" *Strike 3*, 2020 WL 3967836 at *3 (quoting *U.S. v. Taylor*, 487 U.S. 326, 336 (1988)).

"The touchstone of the decision to award attorneys' fees [under Section 505] is whether the successful defense, and the circumstances surrounding it, further the Copyright Act's 'essential goals.'" *Tresona Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n*, 953 F.3d 638, 653 (9th Cir. 2020) (quoting *Kirtsaeng*, 136 S. Ct. at 1989). "Under the Copyright Act, the question is whether a successful *defense* of the action furthered the purposes of the Act, not whether a *fee award* would do so." *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 816 (9th Cir. 2003) (emphasis original).

In making the determination whether to award fees under Section 505, this Court has identified five factors courts may consider: "(1) the degree of success

23

obtained, (2) frivolousness, (3) motivation, (4) [objective] reasonableness of [the] losing party's legal and factual arguments, and (5) the need to advance considerations of compensation and deterrence." *Tresona*, 953 F.3d at 653 (citation omitted) (alterations in original). "Substantial weight should be accorded to the fourth factor."[8] *Id.* (citing *Shame on You Prods., Inc. v. Banks*, 893 F.3d 661, 666 (9th Cir. 2018)). Although these factors are not exclusive, reliance on an "improper factor" constitutes an abuse of discretion. *O'Connor v. Uber Techs., Inc.*, 904 F.3d 1087, 1094 (9th Cir. 2018). Similarly, "a district court abuses its discretion if the court rests its decision on a clearly erroneous finding of fact." *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1123 (9th Cir. 2014).

## A. S3's Legal and Factual Arguments were Objectively Reasonable.

The District Court weighed this factor *in favor* of a fee award, in contradiction to this Court's guidance in *Cobbler* and *Glacier*. *See supra* Sec. I.B. *Cobbler* was not intended to "stem[] the tide of BitTorrent litigation." ER015. Rather, as the D.C. Circuit recently observed, *Cobbler* instructs that it was objectively reasonable for S3 to file suit against Doe as an anonymous placeholder

---

[8] *See also Glacier*, 896 F.3d at 1040–41 (noting that this Court previously called this the "most important factor" and, even after *Kirstaeng*'s endorsement of a "totality of circumstances" approach and its statement that the losing party's reasonableness carries "significant weight," it "is sufficient to note that because the guiding principles of the Copyright Act run throughout the other factors, it remains important.") (citations omitted).

defendant, and to dismiss its claim after learning his identity and determining that it was "unable to plead additional facts tying the registered subscriber to the alleged infringement[.]" *Strike 3*, 2020 WL 3967836 at *6. By extension, the District Court was *wrong* to force S3 to litigate against an anonymous infringer and serve its complaint on a defendant known only to the Court but hidden from S3. Indeed, as demonstrated in this matter, by weighing this factor in favor of a fee award, the District Court created a procedure wherein rightsholders are penalized for merely seeking early discovery to identify an infringer, and for exercising their right to dismiss their claims if they decide not to proceed further.

### i. S3 is Not a "Copyright Troll."

The record in this case leaves no doubt that the District Court harbored a marked degree of skepticism—one might even say disapproval—of S3's anti-copyright infringement campaign[9] and its method of enforcing its rights under the Copyright Act. The District Court went so far as to malign S3 as a "copyright troll," and accused S3 of bringing cases "which appear to be extortive, forcing

---

[9] In its order, the District Court describes S3 as a "purveyor of pornographic motion pictures" and makes other references to "pornographic films" and "pornographic websites." ER002, ER007, ER014. This reflects an unbecoming disdain that clouds the analysis of legal issues that affect all copyright holders. *See Strike 3*, 2020 WL 3967836 at *5; Stephen Carlisle, *Is Pornography Not Protected by Copyright?*, Nova Southern University Office of Copyright (Dec. 7, 2018), *available at* http://copyright.nova.edu/pornography/.

individuals, who would be embarrassed by allegations that they have been visiting pornographic websites, to pay nuisance-value amounts to keep their names out of publicly-available documents," ER014 (citing a case *not* involving S3), suggesting that S3 is "simply in the 'shakedown' business," *id.*, and that it is "adhering to its suspicious litigation script[.]" ER015. S3 had no opportunity to rebut these scurrilous charges and, in fact, none are supported by the record or even remotely true. These charges—stated as fact, not supposition—improperly colored the District Court's discretion in awarding fees.

The District Court devoted a long footnote to discussing "copyright trolls," which it described as deriving "success . . . 'not from the Copyright Act, but from the law of large numbers.'"[10] *Id.* The District Court further charged: "The copyright troll's playbook outlines the following strategy: 'file a deluge of complaints; ask the court to compel disclosure of the account holders; settle as many claims as possible; abandon the rest.'" *Id.* And, "[i]t teaches that cases should be dropped 'at the first sign of resistance' to stay 'one step ahead of any coordinated defense' or, metaphorically speaking, that when 'a Billy Goat Gruff

---

[10] This footnote used the terms "troll," "trolls" and "trolling" no fewer than seven times in twelve lines of text. The District Court adopted this characterization from the now-reversed opinion in *Strike 3 Holdings, LLC v. Doe*, 351 F. Supp. 3d 160 (D.D.C. 2018), *rev'd*, 2020 WL 3967836 (D.C. Cir. July 14, 2020), and a law review article on which that decision relied, despite the fact that it does not discuss S3 at all.

moves to confront a copyright troll in court, the troll [should] cut[] and run[] back under its bridge.'" *Id.*

The fundamental problem with the District Court's description of Trolldom, borrowed from a decision that was reversed as an "abuse of discretion under any applicable standard," and which was specifically criticized by the D.C. Circuit because these exact "negative inferences" lacked factual support, *Strike 3*, 2020 WL 3967836 at *3 n.2, *7–8, is that it cannot be distinguished from what this Court has said rightsholders suffering from mass internet piracy *should* do in its book-end opinions in *Glacier* and *Cobbler.*

The "deluge of complaints" bemoaned by the District Court is merely the product of two factors over which neither S3, nor any other rightsholders facing mass infringement, have any control. Whereas other litigants can obtain informal resolution of their claims by cease-and-desist letters or pre-litigation settlements, this avenue is not open to a litigant whose works are pirated anonymously on the internet. This is because copyright holders do not know, and, by dint of federal law *cannot* find out, the identity of these infringers without a court order. They can send out DMCA notices to try to stop *further* infringement, but these are ineffective. Indeed, in this case Doe admitted that he received such notices from other rightsholders and talked to his Son about them, ER047–48, but it made no difference.

27

The *only* lawful way S3 (and other copyright holders) have of directly combating this mass infringement, which this Court has recognized "can have severe financial consequences for copyright holders," *Glacier,* 896 F.3d at 1035,[11] is to discover the name of the person assigned the IP address being used to commit the infringement, *id.* at 1036, and then determine whether it can identify that person (or someone else) as the infringer. *Cobbler*, 901 F.3d at 1147; *see also Strike 3*, 2020 WL 3967836 at *6. And S3 can only do that by obtaining court authorization to serve a subpoena on the ISP to identify the subscriber, 47 U.S.C. § 551, *et seq.*, which first requires that suit be filed naming the subscriber as the placeholder defendant. *See Strike 3*, 2020 WL 3967836 at *5–7; *Malibu Media, LLC v. Doe*, No. 13-365, 2014 WL 7188822, *6–9 (D. Md. Dec. 16, 2014) (Grimm, J.). In short, because there is a "deluge" of anonymous infringements, there is also a very large number of lawsuits to identify the infringers.[12]

---

[11] The Global Innovation Policy Center, under the sponsorship of the U.S. Chamber of Commerce, released a report in June 2019 finding that digital video piracy conservatively causes lost domestic revenues of at least $29.2 billion and as much as $71.0 billion. It also found that it results in losses to the U.S. economy of between 230,000 and 560,000 jobs and between $47.5 billion and $115.3 billion in reduced gross domestic product (GDP) each year. David Blackburn, Jeffrey A Eisenach & David Harrison, *Impacts of Digital Video Piracy on the U.S. Economy* (June 2019), *available at* https://www.theglobalipcenter.com/wp-content/uploads/2019/06/Digital-Video-Piracy.pdf.

[12] Filing a "very large number of infringement suits" is *exactly* "what the holders of intellectual property rights do when they are faced with mass infringement." *Malibu Media, LLC v. Doe*, No. 13-3648, 2014 WL 2581168, *2 (N.D. Ill. June 9,

After learning the identity of the subscriber, S3 must investigate whether it can identify the actual infringer to a reasonable degree of certainty, in which case it amends its complaint to identify the defendant, usually subject to a protective order. If, on the other hand, S3 determines that it cannot meet its "burden to plead factual allegations that create a reasonable inference that the defendant is the infringer," *Cobbler*, 901 F.3d at 1147, it dismisses the case without further action. Although falsely and colorfully characterized by the District Court as "cut[ting] and run[ning] back under its bridge," ER015 (quoting *Strike 3*, 351 F. Supp. 3d at 162, *rev'd*, 2020 WL 3967836 (D.C. Cir. July 14, 2020)), such a dismissal is, in fact, merely doing the responsible thing and, more importantly, that which is *required* by this Court's decision in *Cobbler*. *Strike 3*, 2020 WL 3967836 at *6–7.

Nor is "settl[ing] as many claims as possible" inconsistent with conducting responsible copyright infringement litigation. "[T]he fact that many such lawsuits settle or are dismissed at an early stage [is not] necessarily suggestive of improper

---

2014); *see also Vient v. APG Media*, No. 18-3862, 2019 WL 2250576, at *5 n.3 (D. Md. May 24, 2019); *Andersen v. Atl. Recording Corp.*, No. 07-934, 2009 WL 3806449, at *7 (D. Or. Nov. 12, 2009). Indeed, "[t]he proliferation of these types of lawsuits would be expected given the alleged infringement by thousands of people. The volume of lawsuits alone does not indicate any impropriety." *Patrick Collins, Inc. v. John Does 1-9*, No. 12-3161, 2012 WL 4321718, at *5 (C.D. Ill. Sept. 18, 2012). "Where, as here, a plaintiff alleges that it is the victim of copyright infringement on a massive scale, the mere fact that it has filed a significant number of lawsuits is not a valid basis on which to impute an improper purpose." *Strike 3*, 2020 WL 3967836 at *8.

intent." *Id.* at \*8. "Standing alone, initiating multiple copyright infringement actions and attempting to negotiate settlements does not indicate copyright misuse or copyright trolling." *Freeplay Music, LLC v. Dave Arbogast Buick-GMC, Inc.*, No. 17-42, 2019 WL 4647305, at \*14 (S.D. Ohio Sept. 24, 2019). Indeed, "[t]he Ninth Circuit is firmly committed to the rule that the law favors and encourages compromise settlements. There is an overriding public interest in settling and quieting litigation. It is well recognized that settlement agreements are judicially favored as a matter of sound public policy. Settlement agreements conserve judicial time and limit expensive litigation." *Camacho v. City of San Luis*, 359 Fed. Appx. 794, 796 (9th Cir. 2009) (quoting *Ahern v. Cent. Pac. Freight Lines*, 846 F.2d 47, 48 (9th Cir. 1988)). In these matters, once the infringer is identified, there is often very little—if anything—that remains in dispute. A reasonable settlement, which often includes a commitment by the defendant to cease infringement and a moderate amount in damages, saves litigation costs and further burdening the court.

Judges who are unaware of what happens between the parties when cases do not proceed to a contested judgment might be suspicious of a litigant who files many cases and then settles or dismisses them swiftly. But in the absence of such

knowledge,[13] it is unfair to tar a litigant as a "troll." *See Strike 3*, 2020 WL

3967836 at *7–8. Indeed, without exception, every Court that has actually

reviewed the *evidence* concerning this accusation against S3—often hurled by

defendants in a desperate attempt to inflame the passions of courts, *see* ER085–89,

as if name-calling were a substitute for well-supported legal arguments[14]—has

determined that there is no basis to malign S3 as a "copyright troll."[15]

  First, S3 does not acquire the copyrights of others and then bring suit hoping

to make a profit by collecting statutory damages; it is the creator of the works-in-

---

[13] As discussed *infra*, the District Court's decision cannot be excused based on a lack knowledge, since it issued an Order to hear exactly why other matters settled and determined S3's actions were proper, but then paradoxically relied on those same matters as a basis to award fees against S3.

[14] *Cf. Bearden v. Health*, No. 20-5047, __ F.3d __, 2020 WL 4218305, at *4 (6th Cir. July 23, 2020) ("Careful research and cogent reasoning, not aspersions, are the proper tools of our trade.") (citation omitted).

[15] *Strike 3 Holdings, LLC v. Doe*, No. 18-12585, 2019 WL 5446239, at *6 (D.N.J. Oct. 24, 2019) (finding, after two (2) days of evidentiary hearings, that "even though numerous cases discuss the fact that Strike 3 has or may engage in abusive litigation practices, the Court has not seen evidence that this occurred in its cases"), *rev'd on other grounds*, 2020 WL 3567282 (D.N.J. June 30, 2020); *Strike 3 Holdings, LLC v. Doe*, No. 18-16593, 2019 WL 4745360 at *6 (D.N.J. Sept. 30, 2019); *Strike 3 Holdings, LLC v. Doe*, No. 18-12609, ECF No. 16 at 6 (D.N.J. June 27, 2019); *Strike 3*, 2019 WL 1529339 at *5; *Strike 3 Holdings, LLC v. Doe*, 370 F. Supp. 3d 478, 481–82 (E.D. Pa. 2019); *Strike 3 Holdings, LLC v. Doe*, 337 F. Supp. 3d 246, 256–57 (W.D.N.Y. 2018); *Strike 3 Holdings, LLC v. Doe*, No. 18-3763, ECF 12, at *1 (N.Y.E.D. Nov. 14, 2018); *Strike 3 Holdings, LLC v. Doe*, No. 18-1762, ECF No. 12 at *1 n.1 (E.D. Pa. Oct. 2, 2018); *Strike 3 Holdings, LLC v. Doe*, No. 18-02019, 2018 WL 10604533, at *3–4 (N.D. Cal. Sept. 14, 2018).

suit and continues to create new motion pictures.[16]  S3 is part of a creative

enterprise whose business is providing high-quality content to its paying

customers.  SR003–08; *see Strike 3*, 370 F. Supp. 3d at 481–82; *see also Malibu*

*Media, LLC v. John Does 1, 6, 13, 14*, 950 F. Supp. 2d 779, 780–81 (E.D. Pa.

2013).  This is the very purpose of copyright law: "To promote the progress of"

creative works.  U.S. Const. Art. 1, § 8, cl. 8; *see Fogerty*, 510 U.S. at 526–27

("The immediate effect of our copyright law is to secure a fair return for an

'author's' creative labor.") (citation omitted).

Second, S3 makes nearly all its revenue from sales of subscriptions, DVDs,

and licenses, and not from litigation.  SR007 (¶32).  *Cf. Glacier*, 896 F.3d at 1042

(describing the "quintessential 'copyright troll'" as "an entity 'more focused on the

business of litigation than on selling a product or service or licensing their

[copyrights] to third parties to sell a product or service.'").  As courts have

repeatedly recognized when rejecting similar arguments by litigants parroting

Judge Lamberth's "scathing" opinion, *see supra*, p.33, n.15, S3 must bring lawsuits

against internet infringers to preserve its creative enterprise, by seeking

---

[16] *Compare Glacier*, 896 F.3d at 1035 (noting that "copyright trolls" are entities
"who buy up copyrights to adult films . . .") (citing *AF Holdings, LLC v. Does 1–
1058*, 752 F.3d 990 (D.C. Cir. 2014)), *with Strike 3*, 2020 WL 3967836 at *8
(distinguishing *AF Holdings*, as "involv[ing] markedly different facts" because
"Strike 3's filings aver that it produced the copyrighted materials at issue[.]").

compensation for sales lost to piracy and redirecting infringers and potential infringers to the legitimate marketplace. SR007.

Third, S3 does not file suits that it drops "at the first sign of resistance." ER015. Indeed, it cannot be stressed enough that the decision the District Court borrowed this conclusion (and others) from was *reversed on appeal* because "[t]he facts before [that] district court did not support these conclusions." *Strike 3*, 2020 WL 3967836 at *7. Suffice it to say, S3 does not "cut and run" whenever it faces opposition. *See, e.g.*, *Strike 3 Holdings, LLC v. Doe*, No. 18-12585, 2020 WL 3567282 (D.N.J. June 30, 2020), *rev'g*, 2019 WL 5446239 (D.N.J. Oct. 24, 2019); *Strike 3 Holdings, LLC v. Doe*, 330 F.R.D. 552, 555 (D. Minn. 2019), *rev'g*, 329 F.R.D. 606 (D. Minn. 2018). In fact, in *this matter*, S3 opposed all of Doe's abusive motion practice, *see generally* ER138–41 (Dkt. Nos. 24–27, 35, 40–43, 48, 54, 57), and only dismissed its claim after learning Doe's identity and concluding it should not proceed further.

As this Court recognized in *Glacier*, judicial concern about copyright trolls may be justified, but "individual cases . . . deserve to be judged on their own merits and not saddled with a blanket indictment against peer-to-peer copyright litigation[.]" 896 F.3d at 1038; *see also Malibu Media, LLC v. Doe*, 238 F. Supp. 3d 638, 645 (M.D. Pa. 2017). Yet even when the District Court turned to other S3 cases before it, these cases proved the exact opposite of what the District Court

33

concluded here.  ER014–15.  Specifically, the District Court cited one of its prior

orders, *id.*; ER019, which, in turn, recites that this case, along with eight others,

were filed by S3 "within a two-day period" and that in each S3 "alleg[ed] that the

subscriber associated with a particular Internet Protocol ('IP') address had

infringed one or more of S3's copyrighted adult motion pictures."  ER018–19.  In a

footnote at the end of that sentence, the order (somewhat inaccurately) describes

the disposition of those cases.  While not identified by name or number, there can

be no doubt as to which cases the court is referring.  What happened in those cases

is instructive of just how cavalier—and clearly unfounded—the District Court's

accusations were in this matter.

In all nine cases, the District Court entered orders prohibiting S3 and its

lawyers from communicating directly with the defendants.  *See, e.g.*, ER030.

Noting that in several cases "plaintiff has voluntarily dismissed its claims with

prejudice without any explanation," the District Court then ordered S3 to "show[]

cause why plaintiff and/or its attorneys should not be sanctioned for failing to

comply with the Court's directive not to communicate directly with any defendant

for any purpose until further order of the Court."  SR033–34.

In response to this Order, S3 reported that five cases had been settled as a

result of negotiations initiated by counsel for the Doe defendants, and that in each

"no communications were conducted by Plaintiff and/or its counsel with the Doe

34

Defendant." SR011–14. As to one case, the settlement included an *acknowledgement* of infringement and a promise not to infringe again (that counsel for the Doe defendant negotiated). SR013. In the sixth case, S3's process server was unable to effect service. SR013–14. And in the seventh case (which the District Court inexplicably and incorrectly said was dismissed for "unknown reasons"), S3 explained that the "Doe Defendant's attorney informed Plaintiff that the infringer was the subscriber's minor son," and S3 dismissed, having "determined that we did not want to pursue the minor son and otherwise felt it was best not to proceed with the case."[17] SR014. The District Court then discharged the OSC, having not found a single impropriety on the part of S3. SR001.

In none of these cases did S3 engage in any of the nefarious tactics associated with trolls, such as "extorting" a settlement, or, indeed, making any settlement demand at all until negotiations were commenced by opposition counsel. In no case did S3 intimate that it would disclose the defendant's true name if settlement was not reached. In no case did S3 engage in anything that could be characterized as a "shakedown business" or pursuit of a "suspicious litigation script." Literally nothing in the record supported the District Court's

---

[17] In the eighth case, Judge Zilly denied S3's motion for default judgment, citing the Court's *own* confusion as to who the appropriate defendant was—confusion caused entirely by the District Court's *own procedure*, wherein *the District Court* received the subpoena response and effected service, and not S3. *See* SR033.

unjustified charge that S3 is "forcing individuals, who would be embarrassed by allegations that they have been visiting pornographic websites, to pay nuisance-value amounts to keep their names out of publicly-available documents." ER014; *cf. Strike 3*, 2019 WL 1529339, at \*5 (observing that "there is no evidence that Plaintiff has engaged in any of the abusive practices used by similar plaintiffs, such as exploiting Defendant's identifying information as leverage for settlement"). Indeed, the record here is to the contrary: Doe (and his Son) remained anonymous for the entirety of this case and remain anonymous to this day.

Simply put, the District Court's charge that S3 is a "copyright troll" finds no support in the record or in reality; it is an unfair, untrue, and improper smear of a responsible litigant who spends tremendous resources protecting its property rights while staying well within this Court's guidance in *Glacier* and *Cobbler* and otherwise operates very respectfully of the courts and their resources. There can be no dispute that S3 has acted responsibly in this case (and the other cases before Judge Zilly), and the District Court's baseless charge that S3 is engaging in "extortive" suits, is in the "'shakedown' business," and is adhering to a "suspicious litigation script," simply has no support in the record. In fact, it is *contradicted* by the record. As such, the District Court's reliance on these "facts" when determining whether to award fees constitutes an abuse of discretion. *See Glacier*, 896 F.3d at 1044 (recognizing that where a District Court awards fees "based on a

36

generally unfavorable view of other BitTorrent litigation . . . without assessing the particulars of this case," it constitutes an abuse of discretion).

### ii. S3's "Failure" to Dismiss its Claim with Prejudice is Not a Valid Basis to Award Fees.

In awarding fees, the District Court observed that "[a] different result might have been appropriate if, back in August 2018, Strike 3 had dismissed its copyright infringement claim **with** prejudice and shortly thereafter sought dismissal of John Doe's declaratory judgment counterclaim as moot." ER013 (emphasis original). This conclusion, however, not only ignores the procedural history of this case and Doe's lack of standing to assert his counterclaim, but also clearly transgresses S3's absolute right to dismiss its claims before the filing of an answer or motion for summary judgment and ignores this Court's guidance in *Glacier* and *Cobbler*.

First, the District Court's decision forgets that "back in August 2018," Doe also had pending counterclaims for copyright misuse and abuse of process. ER090–93. The District Court did not dismiss the copyright misuse counterclaim until October 2018, and allowed Doe's abuse of process counterclaim to survive a motion to dismiss without any explanation whatsoever, ER027, only to later decide in July 2019, after allowing Doe to conduct a fishing expedition, that Doe had

actually never stated that claim at all, holding that Doe's "accusations do not an abuse-of-process claim make."[18] ER021.

Second, while it was improper for the District Court to allow Doe to assert stand-alone counterclaims outside of a pleading, *see supra* p. 8, n. 5, the fact is that at the time S3 dismissed its copyright infringement claim, Doe had filed neither an answer nor a motion for summary judgment. As such, S3 had the absolute right to dismiss its claim, pursuant to Fed. R. Civ. P. 41(a). "This court has emphasized the absolute nature of the right of voluntary dismissal, which 'may not be extinguished or circumscribed by adversary or court.'" *Amer. Soccer Co. v. Score First Enterprises*, 187 F.3d 1108, 1111 (9th Cir. 1999) (quoting *Pedrina v. Chun*, 987 F.2d 608, 610 (9th Cir. 1993)). "Its alpha and omega [is] the doing of the plaintiff alone. *He suffers no impairment beyond his fee for filing*." *Pedrina*, 987 F.3d at 610 (citation omitted) (emphasis added). Yet by counting the exercise of this

---

[18] On this point, it is unclear how the District Court could rationally accuse S3 of "aggressively seeking evidence against [Doe] and his son in the guise of defending against John Doe's now defunct abuse-of-process counterclaim," ER013, since this conclusion conflicts with the District Court's earlier ruling that "Strike 3 was entitled to pursue a theory of defense that another member of defendant's household or someone with access to defendant's IP address had infringed one or more of Strike 3's motion pictures via the BitTorrent network, which would undermine defendant's allegation that Strike 3's copyright infringement claim was frivolous and asserted for purely extortionist or other improper purposes." ER022. Doe's declaratory judgment and abuse of process counterclaims were pending when Doe's Son was deposed. *See* ER040 (Deposition of Son on June 3, 2019); ER020–22 (July 8, 2019 Order dismissing abuse of process counterclaim).

absolute right *against* S3, the District Court inflicted precisely the type of "impairment" that this Court has held is beyond the District Court's authority. After all, a plaintiff's right to dismiss without prejudice is not "absolute" and "unfettered" if it must fear that the District Court will count the exercise of that right against it as a basis to award fees. By considering S3's dismissal as a factor favoring the award of fees, the District Court erred as a matter of law.

Third, the District Court's weighing of this fact *against* S3 cannot be squared with this Court's decisions in *Glacier* and *Cobbler*. *See supra* Sec. I.B. Indeed, a necessary corollary to *Cobbler* is that a plaintiff who receives a subscriber's identity and reasonably decides *not to continue* its action should not be punished, first by being forced to litigate the very claim that it chose not to pursue, and then by the imposition of a fee award against it. In fact, far from punishing similar conduct by rightsholders, courts around the country have recognized that S3's dismissal is exactly how a reasonable plaintiff *should* behave in a BitTorrent copyright infringement matter when it determines that it cannot (or should not) proceed further with its claim. *See, e.g.*, *Malibu Media, LLC v. Redacted*, 705 Fed. Appx. 402, 408 (6th Cir. 2017); *Malibu Media, LLC v. Pelizzo*, 604 Fed. Appx. 879, 881 (11th Cir. 2015); *Virgin Records Am., Inc. v. Thompson*, 512 F.3d 724, 725–27 (5th Cir. 2008); *Interscope Records v. Leadbetter*, No. 05-1149, 2007 WL 2572336, at *1–5 (W.D. Wash. Sept. 6, 2007), *aff'd*, 312 Fed.

Appx. 50 (9th Cir. 2009); *Capitol Records, Inc. v. O'Leary*, No. 05-406, ECF No. 37 (C.D. Cal. Jan. 31, 2006); *Priority Records, LLC v. Chan*, No. 04-73645, 2005 WL 2277107, at *2 (E.D. Mich. May 19, 2005).

> ### iii. The District Court Erred In Concluding that it was Unreasonable for S3 to File Suit "In the First Place."

Finally, the District Court erred to the extent it concluded that S3 "abandoned any assertion that the items allegedly transferred over the BitTorrent system were themselves copyrighted motion pictures or viewable pieces thereof, as opposed to simply non-copyrightable data that may be used to find certain motion pictures and/or their constituent parts within the BitTorrent network," which the District Court felt "should have inhibited [S3] from filing this lawsuit in the first place." ER013–14. The District Court's purportedly factual conclusion—rendered on summary judgment *against* the non-moving party—is contrary to the record evidence, but more importantly, ignores how BitTorrent investigations work. *See Pom Wonderful*, 775 F.3d at 1123 ("Clear error results 'from a factual finding that was illogical, implausible, or without support in inferences that may be drawn from the facts in the record.'") (citation omitted).

S3's investigator's infringement detection system works along the same lines as programs employed by law enforcement to prosecute the distribution of

illegal images of minors.[19]  The investigator begins with a ".torrent file" that is

known to correlate with a targeted file (either a copyrighted work, or illegal

images, respectively).  *See* ER106–07.  The .torrent file contains an "InfoHash"

value, *i.e.*, an alphanumeric value that provides the instructions on how to locate

and acquire pieces of the target file.  ER034.  The investigator uses that .torrent file

(specifically, its InfoHash value) to request pieces of the targeted file from other

persons using the BitTorrent protocol.  *See* ER112–13.  Users with those files

respond to those requests, sending file pieces of the targeted file, which the

investigator captures in PCAP ("packet capture") files for later evidentiary use.

　　*That* is the evidence S3 had when it filed suit:  that someone using Doe's IP

address was distributing pieces of S3's copyrighted works using the BitTorrent

protocol.  ER105–13.  The District Court's conclusion that S3 *abandoned* the

assertion that "pieces" of the works—rather than the .torrent files used to obtain

those pieces—were distributed by Doe's IP address simply cannot be squared with

the record in this matter.  Although S3's declarants used the InfoHash value as a

shorthand to refer to *all* the forensic evidence associated with infringement of each

work, they also clearly and unequivocally described how "pieces" of S3's works

were captured being distributed by Doe's IP address.  *See* ER112–13; *see generally*

_____

[19] *See generally U.S. v. Rees*, 957 F.3d 761, 767–68 (7th Cir. 2020); *U.S. v. Owens*,
No. 18-157, 2019 WL 6896144, at *3 (E.D. Wis. Dec. 18, 2019); *U.S. v. Palmer*,
No. 2:15-CR-1-FTM-38DNF, 2015 WL 4139069, at *3 (M.D. Fla. July 8, 2015).

*In re Malibu Media Copyright Infringement Litig.*, No. 15-04170, 2016 WL 926906, at *3 (N.D. Cal. Mar. 11, 2016).  And the PCAP files, containing the file pieces shared by Doe's IP address and not the .torrent files used to obtain the pieces, were incorporated as part of the PMSJ record.  ER052.  Indeed, even Doe's expert, who reviewed the PCAPs and submitted a report as part of the PMSJ, agreed that, at the very least, S3's PCAPs contained evidence that "only a very small percentage of [each] file was downloaded."  ER057.

Nor did S3 ever "abandon" the assertion that someone using Doe's IP address was distributing pieces of its copyrighted works (although it did voluntarily dismiss its claim against Doe specifically after receiving his identity).  To the contrary, nothing in S3's expert's later declaration disputed, contradicted, or "abandoned" that S3 had evidence that "pieces" of the movies were distributed by someone using Doe's IP address.  ER034–37.  Instead, the expert merely clarified that only the InfoHash value from each .torrent file was listed in Exhibit A of the Complaint, to explain why the District Court's discovery order—limiting S3's ability to search relevant hard drives only for those InfoHash values rather than the presence (or spoliation) of the file pieces themselves—was not workable.  *Id.*

### B. The Factors of Deterrence, Compensation, and the Purposes of the Copyright Act Do Not Support the Fee Award to Doe.

When the District Court's errors of facts and law, and its animus toward S3 specifically and BitTorrent copyright litigation in general, are set aside, its entire

"weighing" of the relevant factors becomes narrowed to three factors. The District Court stated it did "not view deterrence as a basis for *awarding* attorney's fees in this matter," ER015 (emphasis added), and then devoted a *single* sentence of analysis to explain the other factors it considered: "Compensation, however, is a relevant factor, as is the policy underlying the Copyright Act of encouraging defendants to advance and litigate meritorious copyright defenses." *Id.*

This is precisely the type of shortcut the Supreme Court disapproved in *Fogerty* when it overruled this Court's "dual standard," under which "prevailing plaintiffs [we]re generally awarded attorney's fees as a matter of course, while prevailing defendants [had to] show that the original suit was frivolous or brought in bad faith." 510 U.S. at 520–21. The Supreme Court rejected that standard after concluding that "a successful defense of a copyright infringement action may further the policies of the Copyright Act every bit as much as a successful prosecution of an infringement claim by the holder of a copyright." *Id.* at 527. Considering only the *encouragement* of an award of fees to a successful copyright defendant, while disregarding the *discouragement* of the award of fees will have on copyright holders seeking to enforce their rights, is an upside-down application of the "dual standard" the Supreme Court disapproved in *Fogerty*. The factor of "deterrence" was not merely neutral; it weighed *against* rewarding Doe with a fee award, since doing otherwise will only incentivize other anonymous placeholder

defendants to abuse the process approved by this Court in *Cobbler* and *Glacier*, run up unnecessary fees and costs before a rightsholder can even determine if they are the proper defendant, and then drag out litigation even in the absence of a case or controversy between the parties.[20]

More importantly, Doe's counterclaim—seeking merely a factual declaration of innocence—was not a "meritorious copyright defense" that furthered the Copyright Act's essential goals, which must be the "touchstone" of any fee award. *Tresona*, 953 F.3d at 653; *Mattel*, 353 F.3d at 816. The goals of the Copyright Act are "well settled." *Kirtsaeng*, 136 S. Ct. at 1986. As *Fogerty* explained, "copyright law ultimately serves the purpose of enriching the general public through access to creative works[.]" 510 U.S. at 527; *Glacier*, 896 F.3d at 1041. The statute achieves that end by striking a balance between two subsidiary aims: encouraging and rewarding authors' creations while also enabling others to build on that work. *See Fogerty*, 510 U.S. at 526–27.

---

[20] *Cf. Riviera Distributors, Inc. v. Jones*, 517 F.3d 926, 929 (7th Cir. 2008) ("The party responsible for creating excessive legal costs must bear them itself in the end."); *Criminal Prods., Inc. v. Brinkley*, No. 17-550, ECF No. 108 at *4–5 (D. Utah June 30, 2020) (awarding copyright infringement defendant only a fraction of fees sought where the defendant caused the case to "explode[] in defense activity" and declined opportunities "to resolve claims against him before running up significant legal bills"); *Killer Joe Nevada, LLC v. Leaverton*, No. 13-4036, 2014 WL 3547766, at *7 (N.D. Iowa July 17, 2014) (denying attorney's fees to a defendant who counterclaimed for a declaratory judgment of non-infringement), *aff'd sub nom.*, 807 F.3d 908 (8th Cir. 2015).

Thus, where defendants prevail based on substantive defenses that expand the public's access to creative works (such as public domain, fair use, abandonment, implied license, or parody), or which demarcate the boundaries of copyright law, a fee award may be warranted.[21]  However, successful defenses "do not always implicate the ultimate interests of copyright[.]"  *Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 560 (9th Cir. 1996) (on remand from the Supreme Court). For example, where the defendant prevails on a technical defense, rather than one which serves the purposes of the Copyright Act, a fee award to the defendant is not proper.[22]

Here, the District Court incorrectly concluded that *any* successful defense of a copyright claim satisfies the purposes of the Act.  Yet Doe *lost* on his substantive copyright defense of copyright misuse, *see* ER26–28, and Doe's victory on his claim for declaratory relief did nothing to demarcate the boundaries of copyright law or "enrich[] the general public through access to creative works[.]"  *Fogerty*, 510 U.S. at 527.

---

[21] *See, e.g.*, *Doc's Dream, LLC v. Dolores Press, Inc.*, 959 F.3d 357, 362 (9th Cir. 2020); *Tresona*, 953 F.3d at 653; *Gonzales v. Transfer Techs., Inc.*, 301 F.3d 608, 609 (7th Cir. 2002) (Posner, J.) ("[A] successful defense enlarges the public domain, an important resource for creators of expressive works.").

[22] *See, e.g., SellPoolSuppliesOnline.com LLC v. Ugly Pools Arizona Inc.*, No. 15-01856, 2019 WL 1118206, at *8 (D. Ariz. Mar. 11, 2019), *aff'd*, No. 18-16839, 2020 WL 1527774 (9th Cir. Mar. 31, 2020); *Wolf v. Travolta*, No. 14-00938, 2016 WL 1676427, at *3–4 (C.D. Cal. Apr. 25, 2016).

Indeed, for this same reason, the District Court was wrong to conclude that "[c]ompensation . . . is a relevant factor," because this factor is intended to "ensure that all litigants have equal access to the courts to vindicate *their statutory rights*." *Schiffer Publ'g, Ltd. v. Chronicle Books, LLC*, No. 3-44444962, 2005 WL 1244923, at *6 (E.D. Pa. May 24, 2005) (quoting *Quinto v. Legal Times of Washington, Inc.*, 511 F. Supp. 579, 581 (D.D.C. 1981)) (emphasis added). But Doe had *no statutory rights* to vindicate; he merely sought a declaration that he did not do what he has no right to do: download and distribute S3's works.

"This is not a case of the infringer creating something new and incorporating a copyrighted element into that new, creative work." *Glacier*, 896 F.3d at 1041. Doe's "victory" in forcing S3 to prove up an infringement claim that it had determined it did not wish to pursue—and had properly dismissed—may have served the financial interests of Doe's lawyers, but it did nothing to "further[] the policies of the Copyright Act." *Kirstaeng*, 136 S. Ct. at 1986 (quoting *Fogerty*, 510 U.S. at 527).

## **<u>CONCLUSION</u>**

This Court said in *Glacier* what it can say again here: BitTorrent lawsuits "are not without controversy: many involve 'copyright trolls' who buy up copyrights to adult films and then sue masses of unknown BitTorrent users for illegally downloading pornography. *This one is different* . . . ." 896 F.3 at 1035

46

(footnote omitted) (emphasis added).  S3 is not in the business of collecting other people's copyrights or forcing innocent parties to pay nuisance settlements to avoid embarrassment.  S3 is part of a creative enterprise that relies on its devoted fans, who lawfully acquire access to its works, for its success.  It pursues copyright infringers as a costly but necessary way of maintaining the viability of its business and in fairness to its loyal customers, who pay hard-earned money for what others are stealing on a massive scale.

In pursuing its enforcement efforts, S3 is certainly aware of the possibility that some people may not want their alleged interest in adult works revealed to the public and takes steps to remove this concern as a factor in its suits.  Moreover, S3 tries to dispose of its cases quickly, both to minimize the costs involved and to avoid burdening the federal courts with its lawsuits.  When it determines that it cannot maintain a claim against a single individual, it promptly dismisses the case, not because it is unwilling to fight (as the District Court seemed to believe), but because dismissal is the right thing to do—as this Court made clear in *Glacier* and *Cobbler*.

In this case, S3 acted in accordance with these principles.  It did not deserve the indignities heaped on it by the District Court, nor the expense, burden, and delay occasioned by the District Court's failure to dismiss Doe's declaratory judgment counterclaim once it became clear he lacked standing to pursue it.  The

47

purposes of copyright would be disserved by affirmance of the District Court's award of fees and costs under Section 505 of the Copyright Act.

Accordingly, S3 respectfully requests that the Court reverse the District Court's grant of summary judgment to Doe on his counterclaim for a declaration of non-infringement, vacate the award of fees and costs, and remand this matter to the District Court with the instruction that it be dismissed for lack of standing.

Dated:  August 3, 2020                    Respectfully submitted,

                                          */s/ Lincoln Bandlow, Esq.*
                                          LINCOLN BANDLOW

                                          */s/ John C. Atkin, Esq.*
                                          JOHN C. ATKIN

                                          */s/ Jeremy Roller, Esq.*
                                          JEREMY ROLLER

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Circuit Rule 32-1(a), this brief contains 13,997 words and complies with that provision.

*/s/ Jeremy Roller, Esq.*
JEREMY ROLLER

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
### Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** | 20-35196

I am the attorney or self-represented party.

**This brief contains** | 13,997 | **words**, excluding the items exempted

by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R.

App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

( • ) complies with the word limit of Cir. R. 32-1.

( ) is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

( ) is an **amicus** brief and complies with the word limit of Fed. R. App. P.
29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

( ) is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

( ) complies with the longer length limit permitted by Cir. R. 32-2(b) because
*(select only one):*

    ( ) it is a joint brief submitted by separately represented parties;

    ( ) a party or parties are filing a single brief in response to multiple briefs; or

    ( ) a party or parties are filing a single brief in response to a longer joint brief.

( ) complies with the length limit designated by court order dated [            ].

( ) is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/ Jeremy Roller | **Date** | 08/03/2020

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**　　　　　　　　　　　　　　　　　　　　　　　　　　　*Rev. 12/01/2018*